UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY CLEARY, formerly known as RANDY
REITZ, formerly known as RANDY REETZ,

      Plaintiff,                                       No. 2:12-cv-11988

v

                                            HON. LAWRENCE P. ZATKOFF

DANIEL H. HEYNS, RUTH JOHNSON, MAURA
CORRIGAN & DAVED B. BEHEN, in their official    MAG. MARK A. RANDON
capacity,

      Defendants.

_____

| | |
|---|---|
| Ian B. Lyngklip (P47173) | Thomas M. Loeb (P25913) |
| Attorney for Plaintiff | Co-Counsel for Plaintiff |
| Lyngklip Assoc Consumer Law Center | 32000 Northwestern Hwy, Ste 170 |
| 24500 Northwestern Hwy., Suite 206 | Farmington Hills, MI 48334 |
| Southfield, MI 48075 | (248) 851-2020 |
| 248.208.8864 | |

_____

Lisa Clark Geminick (P60964)
Joseph T. Froehlich (P71887)
Assistant Attorney General
Attorneys for Defendants
PEET Division
P.O. Box 30736
Lansing, MI 48909
517.373.6434

_____/

**DEFENDANT RUTH JOHNSON'S RESPONSE TO PLAINTIFF'S PARTIAL MOTION
FOR SUMMARY JUDGMENT**

## CONCISE STATEMENT OF ISSUES PRESENTED

1.   Whether declaratory judgment is an inadequate method of obtaining relief where the legal relationship between the parties is already clearly established and judgment will not resolve the problem.

2.   Whether Plaintiff's request for a preliminary injunction should be denied where he is unlikely to succeed on the merits of his claim because (A) the Secretary of State provides constitutionally sufficient post-deprivation hearings in license suspension actions; (B) Plaintiff cannot establish irreparable harm because there is an immediate remedy available to him through other means, and (C) an injunction would cause harm to the Secretary of State and the public.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Authority*:

*Ahlers v. Schebil*,
   188 F.3d 365 (6th Cir. 1999) ................................................................. 16

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)............................................................................... 7

*Basicomputer Corp. v. Scott*,
   973 F.2d 507 (6th Cir.1992) ................................................................. 18

*Cameron v. Secretary of State*,
   63 Mich. App. 753, 235 N.W.2d 38 (1975)........................................... 15

*Cameron v. Seitz*,
   38 F.3d 264 (6th Cir.1994) ................................................................... 16

*CSX Transp, Inc v. Tennessee State Bd. of Equalization*,
   964 F.2d 548 (6th 1992) ....................................................................... 14

*Dixon  v. Love*,
   431 U.S. 105, 97 S.Ct. 1723 (1977)...................................................... 15

*Grand Trunk Western RR Co. v. Consolidated Rail Corp.*,
   746 F.2d 323 (6th Cir. 1984) ................................................................. 8

*Hunter v. Bryant*,
    502 U.S. 224 (1991)............................................................................. 16

*Illinois v. Batchelder*,
   463 U.S. 1112, 103 S.Ct. 3513, 77 L.Ed. 1267 (1983 )........................ 15

*In re Dolorean Motor Co*,
    755 F.2d 1223 (6th Cir. 1985) ................................................................ 14

*Mathews v. Eldridge*,
    424 U.S. 319, 96 S.Ct. 893, 47 L.Ed. 18 (1976) ...................................... 15

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) .................................................................................. 8

*Maumee v. Gabriel*,
    518 N.E.2d 558 (Ohio 1988) .................................................................... 15

*Nicholas v. Secretary of State*,
    74 Mich. App. 64, 253 N.W.2d 662 (1977) .............................................. 15

*Public Service Comm'n of Utah v. Wycoff*,
    344 U.S. 237, 73 S.Ct 236, 97 L.Ed 291 (1952) ...................................... 8

*Silberstein v. City of Dayton*,
    440 F.3d 306 (6th Cir. 2006) .................................................................... 17

*Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*,
    119 F.3d 393 (6th Cir. 1997) .................................................................... 14

*Southwest Voter Registration Educ. Project v. Shelley*,
    344 F.3d 914 (9th Cir. 2003) .................................................................... 14

*Sova v. City of Mount Pleasant*,
    142 F .3d 898 (6th Cir.1998) .................................................................... 16

*Wilson v. Garcia*,
    471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed. 2d 254 (1985) ............................ 2

**Statutes**

28 USC § 2201 ............................................................................................ 8

Mich. Comp. Laws §600.5805 (10) ............................................................ 2

**Other Authorities**

C. Wright, A. Miller & M. Kane,
    *Federal Practice and Procedure* § 2759 at 645 (1983) ............................ 8

**Rules**

Fed. R. Civ. P.  56(c) .................................................................................. 7

Fed. Rule Civ. P. 30(b)(6)...........................................................................................................17

## INTRODUCTION

Plaintiff, Randy William Cleary, filed suit against the directors of four Michigan agencies including Secretary of State, Ruth Johnson, in her official and individual capacity. Plaintiff alleges he has been victimized for more than twenty years by a third party, Benny Parker, who has used Plaintiff's name as an alias in criminal matters. After Plaintiff's license was in suspended 2011 following a Georgia drug crime conviction allegedly belonging to Parker, Plaintiff file suit against the agency directors alleging they have failed to properly protect him from the harm caused by Parker and should disassociate the alias from Parker's criminal history. Plaintiff filed his Motion For Partial Summary Judgment against Secretary Johnson seeking a declaratory judgment that he is not Benny Parker and to enjoin the Secretary of State from taking any action against his driving record for traffic violations or criminal convictions without proof by government issued identification or biometric data/fingerprints that Plaintiff was the person incurring the violations or conviction.

The Secretary of State utilizes information received from courts around the country to regulate Michigan drivers in the interest of public safety. The United States Supreme Court has clearly established that post-deprivation hearings are constitutionally adequate in driver's license suspension actions. Plaintiff was notified of the impending suspension and given the opportunity for a hearing on the matter. Plaintiff also had the opportunity to protect himself by taking part in government sponsored measures prior to the suspension such as placing a flash on his record to notify law enforcement he was a victim of identity theft, making a criminal complaint against the identity thief, registering in the national database for identity theft victims—all of which had the potential to warn law enforcement officers that the person claiming to be Plaintiff may not be. Plaintiff did not take any of those actions. Even since the suspension, Plaintiff has failed to take

the simple actions necessary to have his driving privileges reinstated, but seeks instead to hold the Secretary of State responsible.

If Plaintiff believes that the applicable law is inadequate for identity theft victims, his remedy is with the Legislature that could enact a law requiring additional measures prior to suspending the driving privileges of a person registered as an identity theft victim through the Michigan State Police, Secretary of State, and the Federal Bureau of Investigations. But, the idea that the Secretary of State should be responsible for the criminal acts of third parties and the dissemination of conviction information from courts and law enforcement across the country imposes an insurmountable duty on the agency. Plaintiff is understandably upset. His recourse and solution, however, do not lie with Secretary Johnson or the other Defendant agencies.

The following analysis of Plaintiff's requests for declaratory and injunctive relief clearly shows that such relief is inappropriate where the Secretary of State has constitutionally sufficient procedures to protect Plaintiff's interest and Plaintiff has rejected the remedies that lie at his fingertips.

## COUNTER-STATEMENT OF FACTS

Plaintiff's name is Randy William Cleary. He was born on May 1, 1966 and has a Michigan driver's license number ("DLN"). He filed a complaint against four Michigan agencies claiming civil rights violations because a third party, now known to be Benny Parker ("Parker"), has used his name as an alias along with his date of birth (d.o.b.) and DLN over the past two decades when involved in illegal activity. (Amended Complaint, Dkt. #18 General Allegations). Plaintiff's given name was "Randy William Reetz," which he changed in 1993 to "Randy William Reitz" in an effort to disassociate himself with the criminal record of the third party, who had been convicted and sentenced to the Michigan Department of Corrections under the name "Randy William Reetz." (Dkt. #18 ¶33.) Plaintiff changed his name to "Randy William Cleary" in 2009. (Deposition of Randy Cleary, Dkt. #27-3, p. 21.) Although Plaintiff testifies he does not know Parker, both times Plaintiff changed his name, Parker began using the new name. (Dkt. #27-3, p. 45.) Mr. Cleary has no explanation for how Parker kept abreast of the name changes. (Dkt. #27-3, p. 37.)

Amid the surplus of theories contained in Plaintiff's Amended Complaint and Motion for Partial Summary Judgment, the core issue is whether the Secretary of State ("SOS") provides sufficient due process in driver's license suspension actions. For the purpose of Plaintiff's current motion, the only relevant facts surround the September 11, 2011 suspension of Plaintiff's driving privileges by the Michigan Secretary of State and the circumstances leading to the suspension.[1]

---

[1] Many of the allegations contained in the Amended Complaint are too remote in time to be relevant to Mr. Cleary's case. A claim under 42 U.S.C. §1983 is subject to the three-year Michigan personal injury statute of limitations. See *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed. 2d 254 (1985); Mich. Comp. Laws §600.5805 (10).

**The August 2011 license suspension based on a Georgia drug crime conviction**

In August 2011, the Michigan Secretary of State received a certified abstract of a drug conviction from the Georgia Department of Driver Services regarding Michigan driver, "Randy William Clearly" with a date of birth of 05/01/1966 and a DLN matching Plaintiff's. (Georgia Dept. of Driver Services Abstract: Dkt. #27-4); (Deposition of Fred Bueter/SOS, Dkt. #27-5, p. 66). By statute, if a Michigan driver is convicted out-of-state of any charge that if convicted in Michigan would result in the suspension of driving privileges, the Michigan driving privileges are suspended upon receipt of a certified abstract from the adjudicating jurisdiction. Mich. Comp. Laws §257.319e. This statutory framework has been upheld by the highest court as constitutional in other states. See *Mackey v. Montrym*, 443 U.S. 1, 10, 99 S.Ct. 2612, L.Ed.2d 321 (1979).

In this particular case, between June 1st and June 20th 2010, someone identifying himself as a Michigan driver with the driver's license number matching Plaintiff's and the same date of birth was stopped by four different law enforcement agencies in Ohio and Georgia. (Flowery Branch Incident Report 06/22/2010: Exhibit 1). At the first stop in Auglaize, Ohio on June 1, 2010, the driver was identified as Randy W. Reetz Cleary, but signed the ticket as Randy Reetz Clearly. (Auglaize Citation #Z220108; Exhibit 2). On June 8, 2010, the driver was stopped by the Flowery Branch (GA) police department and identified himself as Randy Clearly. (Inc. Rpt.:Ex. 1). He did not have a driver's license in his possession and produced the Auglaize citation as identification. (*Id.*). The driver was issued several citations at this stop all listed under the name "Randy Clearly" with the same DLN as the Auglaize citation. (Inc. Rpt.:Ex. 1). On June 14th, a driver was stopped by a Winder (GA) police officer and arrested for possession of marijuana under the name "Randy Clearly" with a date of birth of 5/1/1966. (Winder Incident Report #10001811: Exhibit 3). On June 20, 2010, Hall County (GA) Sheriff's Department

arrested the driver under the name Randy Reetz (citations signed as Randy Reetz C.) for possession of marijuana. (Hall County Sheriff's Office Incident Report, Exhibit 4).

In the midst of these arrests, on June 10, 2010, Lt. David Spillers, a detective with the Flowery Branch police department, received a phone call from a local man named Sonny Parker. Lt. Spillers notes in his report that Parker informed him that Randy Reetz/Randy Cleary/Benny Parker was his nephew and was in town using drugs and carousing with Sonny's wife Shirley. (Inc. Rpt.:Ex. 1 p. 4). Lt. Spillers conducted an investigation tracking the law enforcement contacts beginning on June 1st in Auglaize. Lt. Spillers' notified local law enforcement to be on alert for an individual going by the name of Benny Parker/Randy Cleary. (*Id.*). On June 20th, Lt. Spillers received information from the Hall County Sheriff's Office that Parker/Cleary was in the Hall County jail for possession of marijuana. (*Id.*). Lt. Spillers issued warrants and charged the individual with making a false statement and 1st degree forgery for providing the name Cleary/Clearly and signing the citations under a false name. (Hall County Arrest Report: Exhibit 5). From this point in time, the person was called "Parker." Parker entered a plea in Hall County for possession of marijuana in exchange for a dismissal of the other claims. He was sentenced to a year in jail under the name Benny Parker. (Interstate Identification Index: Exhibit 6, pp. 17-19 ). Whether the Winder court was aware of the matter is unknown, but the conviction from Winder was entered under the name "Randy William Clearly." (*Id*. at 17). Notably, after being charged with identity theft related crimes, the individual was arrested again on March 18, 2012 in Flowery Branch for possession of marijuana, but used his birth name rather than an alias. (Flowery Branch Incident Report #12-2388 dated March 18, 2012: Exhibit 7).

Based on the Winder conviction, the Georgia Department of Driver Services notified the State of Michigan of a drug crime conviction for a Michigan driver. (Notice Georgia Department

5

of Driver Services:  Dkt #27-3).  The driver was identified as "Randy William Clearly" d.o.b.

5/1/1966 and a DLN matching Plaintiff's .  The Michigan SOS entered a suspension of the

driver's privileges in accordance with state law and provided pre-suspension notice to Mr. Cleary

(Order of Action: Dkt #27-7 ).

      In applying in-state and out-of-state convictions to the driving records of Michigan

drivers, the SOS utilizes a two-out-of-three criteria match system using the driver's name, date of

birth, and Michigan DLN.  (Bueter Deposition, Dk# 27-4, p. 66).  In Mr. Cleary's case, the SOS

employee identified an exact match as to the date of birth and DLN. (*Id.*).   The name on the

abstract was one letter off from the name associated with the Michigan DLN contained in the

abstract.  (*Id.*).   The Georgia abstract indicated a conviction on a drug charge for "Randy

William Clearly" while the name in the SOS database associated with the DLN listed on the

abstract was "Randy William Cleary."  (*Id.*, Dkt #27-3).   Having met the two-out-of-three

standard and with a near match on the third, the conviction was attributed to the driving record of

Plaintiff, Randy William Cleary, in accordance with policy.  (Dkt #27-4, p. 66; SOS Out-of-State

Document Procedures: Dkt #27-6).

      On August 26, 2011, the SOS notified Randy William Cleary by written Order of Action

that his driving privileges would be suspended for six months effective September 11, 2011

based on a Georgia drug crime conviction. (Dkt. #27-7 ).   The Order of Action also notified Mr.

Cleary of his right to appeal the suspension by mailing or faxing a written request.  (Dkt. #27-7).

Mr. Cleary did not file a request for appeal.  In fact, the only contact Mr. Cleary had with the

SOS was an email sent by him on October 11, 2011 asking how to have his license reinstated

because someone had been using his name.  (Email correspondence dated October 11, 2011: Dkt

#27-8; Bueter Deposition Dkt #27-4, p. 106).   According to SOS records, the only other

communication initiated by Mr. Cleary occurred twenty-three years earlier by letter dated

October 17, 1988 directed to Secretary of State Austin requesting help to have his driving

privileges restored because a person named Benny Ray Parker had Cleary's driver's license and

was in legal trouble. (Letter to Secretary of State dated October 17, 1988: Dkt# 27-9; Bueter

Deposition Dkt #27-4, pp. 85, 106 ).

**The governmental programs designed to assist victims of identity theft**

Plaintiff seeks to hold the State of Michigan and its agencies responsible for the criminal

acts of Benny Parker.  Plaintiff also appears to impose a duty and a due process requirement

above that mandated by clearly established law to prevent Plaintiff from incurring harm from this

third party.  Both the State of Michigan and the federal government offer remedies to victims of

identity theft to help protect them from the injuries Mr. Cleary complains of in his Amended

Complaint.  The remedies include having an alert placed on the driving record (a "flash")

warning law enforcement nationwide that someone has used the driver's name fraudulently, (2) a

subscription for notification of any impending adverse action against driving privileges and the

opportunity to request a hearing, (3) a Michigan Record Challenge that alerts law enforcement

that a name may be the subject of identity theft and to request additional identification, and (4) a

federal database, the National Crime Information Center (NCIC) Identity Theft File, which has

been available to law enforcement at all levels including roadside stops since 2005.

http://www.fbi.gov/foia/privacy-impact-assessments/ncic-identity-theft).  Mr. Cleary, however,

did not avail himself of any of the governmental assistance offered.

While all four of the remedies listed would provide Plaintiff with protections against the

actions of an identity thief, most relevant to this response is the SOS flash.  After a prior problem

caused by Parker using Plaintiff's name, on July 20, 1999 Plaintiff had a flash placed on his

driving record. (Correspondence from Secretary of State dated July 20, 1999: Dkt # 27-15).  A

statement on the flash signed by Plaintiff informed him that it would remain on the driving

record for seven years.  (*Id.*).  But, Plaintiff failed to renew the flash.  Thus, in 2010 when the

charges and tickets were issued in Ohio and Georgia, there was no indication to the law

enforcement at the roadside stops that the name Randy Reetz/Cleary/Cleary was implicated in an

identity theft scheme.[2]

## ARGUMENT

### I.      Standard of Review

Summary judgment is appropriate only if the answers to the interrogatories, depositions,

admissions, and pleadings combined with the affidavits in support show that no genuine issue as

to any material fact remains and the moving party is entitled to judgment as a matter of law. *See*

Fed. R. Civ. P.  56(c). A genuine issue of material fact exists when there is "sufficient evidence

favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty

Lobby, Inc.,* 477 U.S. 242, 249 (1986) (citations omitted). In applying the summary judgment

standard, the Court must view all materials supplied, including all pleadings, in the light most

favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*

---

[2] Defendants made the following point in their Motion For Summary Judgment (Dkt. #27), but it bears repeating here.  Plaintiff's counsel holds the belief that a flash should prevent the SOS from recording any tickets or penalties against the driving record of the flash holder unless the issuing law enforcement agency can provide concrete proof of identity. (Dkt. #18).  This viewpoint ignores law enforcement reality.  Offenders give false names and offenders claim not to have identification.  If law enforcement is handicapped in issuing citations or making arrests without positive proof of offender identification, the newest and easiest way to avoid criminal liability from the offender position is to deny having any identification.  The answer to this problem lies not in handcuffing law enforcement, but providing the innocent driver with notice and the opportunity to be heard when action is taken against his driving privileges based on a conviction or citation that he did not himself receive.  The Michigan Secretary of State provides both when suspension is mandated by statute.

475 U.S. 574, 587 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may not be granted." *Anderson,* 477 U.S. at 249–50 (citations omitted).

## II.    This Court should decline to exercise jurisdiction over Plaintiffs' request for declaratory judgment against the Secretary of State.

Federal courts are not in the business of declaring identities.  The Declaratory Judgment Act provides that in a case of actual controversy, a competent court may "declare the rights and other legal relations" of a party "whether or not further relief is or could be sought."  28 USC § 2201; *Public Service Comm'n of Utah v. Wycoff*, 344 U.S. 237, 241, 73 S.Ct 236, 97 L.Ed 291 (1952).  It is well-settled that the granting of a declaratory judgment rests in the sound discretion of the court and the court may refuse to hear such a claim. *Grand Trunk Western RR Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (citing C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2759 at 645 (1983)).  There are two principal criteria used in determining whether a declaratory ruling is appropriate:  1) whether the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and 2) whether judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.  *Grand Trunk*, 746 F.2d at 326 (citing E. Borchard, DECLARATORY JUDGMENTS 299 (2d Ed. 1941)).

The Sixth Circuit considers the following factors in determining whether it is appropriate for a district court to issue a declaratory ruling:  (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for *res judicata*;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and

9

improperly encroach upon state jurisdiction; and, (5) whether there is an alternative remedy which is better or more effective. *Grand Trunk*, 746 F.2d at 326 (citing 6A Moore's Federal Practice at 57-37 (1983)).

Plaintiff states that he seeks a declaration from this Court that "he is not the individual who committed the Georgia traffic offenses for which the SOS suspended his license."  (Mot. Partial Summ. Judg., Dkt. # 25).   His analysis, however, contemplates a far broader ruling that would (1) establish Plaintiff's "rights relative to the State of Michigan," (2) provide him with due process, (3) declare that Plaintiff is a victim of identity theft creating a record for future interactions between Plaintiff and the SOS, and (4) clarify the legal relations of the parties. (Dkt. #25).  Applying the factors set forth in *Grand Trunk* to Plaintiff's narrow request and broader analysis, declaratory relief is improper.

### A.      Declaratory judgment does not resolve the controversy

A declaratory judgment from this court would not resolve Plaintiff's problem.  Plaintiff claims to be the victim of identity theft committed by a third party.  There is no guarantee that Parker—the proximate cause of Plaintiff's problems—will stop using Plaintiff's or any other name when in contact with law enforcement.   Rather than filing a criminal complaint against Parker at any time over the past twenty years, Plaintiff asks this Court to bind the SOS from its duties to regulate Michigan driving records.

Plaintiff asserts the remedy is to preclude the SOS from taking any action against his driving record unless he is positively identified by fingerprints.  But, the SOS is not the wrongdoer.  The suspension of Plaintiff's driving privileges is provided for by statute and was based on a certified abstract of conviction from the State of Georgia.  Plaintiff's circumstances are unfortunate, but Plaintiff seeks to end the problem with the extraordinary solution of stripping the SOS of its jurisdiction over his driving record and potentially over the driving

10

records of anyone contesting the basis of a suspension.   A judgment based on this fact pattern,

especially where Plaintiff has not utilized governmental assistance, creates a precedent

dangerous to the SOS's authority to regulate Michigan drivers and maintain safe public

highways.

      **B.**     **A declaratory judgment cannot clarify the legal relations between the parties.**

The legal relations between the SOS and Plaintiff are already sufficiently established.

The SOS has authority over the driving privileges of Michigan drivers including Plaintiff.  The

rights and duties of both the SOS and Plaintiff, including mechanisms protecting due process

rights, are unambiguously defined and regulated by statute.  The question here as raised by

Plaintiff is one of identity.  It is law enforcement, not this Court, that has the tools and

procedures necessary to definitively identify a person.  Plaintiff seeks a declaration that he did

not commit the crimes in Georgia, yet he refuses to submit himself for prints to be compared to

the prints from the Georgia arrest.  The State is not omniscient; it cannot determine identity

without the aid of law enforcement, just as it cannot know definitively if a conviction is

erroneous until the issue is raised.  The State has created a process to maintain safe highways and

track criminal offender. It relies on courts, law enforcement and other states to provide

information that will assist in the process.  There will be mistakes given the voluminous amounts

of  information the SOS is charged with maintaining.  The State must rely on its citizens to

participate in the process and Plaintiff has failed to do so.

Moreover, a judgment that Plaintiff Randy Cleary is not the same person as Benny Parker

aka Randy Reetz aka Randy Cleary will impede the Secretary of State and the other Defendant

agencies that track offender information by interrupting the gathering of information.  For

example, if Parker commits additional crimes under the name Reetz or Cleary, the State of

Michigan should know and document that information.  If it did not, Parker would be the one freed from his criminal history.

Plaintiff obtained a Michigan Record Challenge from the Michigan State Police after his license was suspended in 2012.  Typically, the Record Challenge is used to present to third parties when the victim of identity theft is erroneously contacted by law enforcement or applies for a job requiring a background check.  The Record Challenge *is* a declaration that Plaintiff does not have a criminal record in Michigan and, in this case, may be the victim of identity theft.  A declaratory judgment can do nothing more than say Plaintiff was the victim of identity theft.  It cannot establish that Plaintiff has not committed or been convicted of a criminal act after the date it is entered.   The judgment will not bind any agency or entity not a party to this suit.  Thus, it does not provide Plaintiff with anything more than what is currently available to him.  In fact, other measures provide more insulation from damages caused by the identity thief.

    **C.**    **Plaintiff seeks to use a declaratory judgment to establish the law of the case and circumvent a trial on the merits.**

Plaintiff is seeking relief at this juncture that is not timely and is designed to skirt the judicial process.  Plaintiff argues that he is unable to drive and therefore unable to work and must have relief.  But, Plaintiff's driving privileges could have been reinstated nearly immediately had he filed an appeal after receiving the August 26, 2011 notice, or; he could have had his driving privileges restored in March, 2012 at the termination of the six-month suspension, or; he could have had his driving privileges restored at the offer of the State since November, 2012.  He has failed to take advantage of any one of these opportunities.  He now seeks immediate relief via summary judgment that would establish the law of this case prior to a trial on the merits—procedural fencing.

    **D.**    **A declaratory action would unnecessarily infringe on the operations of the State where there is no indication the procedures are constitutionally deficient and where less intrusive and more effective remedies are available to Plaintiff.**

The Michigan SOS procedures comply with due process as argued fully in Defendants' Motion for Summary Judgment (Dkt. #27).   There is no indication that the State's procedures require federal intervention to protect the rights or interests of its citizens.  This is the friction, this prong is designed to prevent.  The law today is clearly established that a post-deprivation hearing is constitutionally sufficient in license suspension actions.  The SOS has complied with the clearly established law and thus, is not violating constitutional rights. While some may be unhappy with the outcomes in a small number of cases, it does not render the SOS's action illegal requiring federal court intervention.

As to more effective remedies, there are defenses in place under both state and federal programs that would give Plaintiff as much security against a third party criminal act as any citizen could expect. The SOS has offered for seven months to reinstate Plaintiff's driving privileges if he presents himself for fingerprints that can be compared to prints on file with the State of Georgia for the drug conviction.  If cleared, his license would be reinstated immediately. The State's offer would also provide Plaintiff with a specific identification number for his prints that would be available to law enforcement nationwide.  Combined with a flash on his Michigan driving record, which is also available to law enforcement nationwide, Plaintiff would be more insulated from convictions incurred by a third party being communicated to the SOS or any other agency.

The theory behind the solution is that if Benny Parker attempts to use Plaintiff's name, birthdate and DLN, law enforcement will see the flash when the information is run through the National Crime Information Center database.  If the suspect cannot produce a driver's license, he

would be fingerprinted and disassociated from Plaintiff's current name. But, Plaintiff has refused to partake of the solution without an order that contains a declaration that the SOS will never again take action against his driver's license. Such a position is reminiscent of cutting off a facial appendage to exact revenge on the remainder—it serves no purpose but to cause the self pain. The SOS is not the cause of Plaintiff's harm, but in conjunction with other state agencies and the federal government it has developed programs to assist Plaintiff with ending the harm. Plaintiff keeps crying out in pain, but has not attempted to employ the protections in place to determine if they will work.

Declaratory judgment is not the proper vehicle to solve Plaintiff's problem. His most immediate difficulty—suspension of his driving privileges—can be resolved by less drastic means. And, his long term problem of a third party using his identifying information can be mitigated by taking part in government sponsored programs designed to assist victims of identity theft. Thus, his request for declaratory action should be denied.

## III.   The factors for granting or denying a preliminary injunction do not weigh in favor of granting Plaintiffs' Motion

Plaintiff's attempt to enjoin the SOS from exercising its authority to regulate Michigan drivers unless provided with proof that the arresting agency or court confirmed the identity of the suspect by government issued identification or biometric identification is an improper and unworkable use of an extraordinary remedy. When determining whether to issue a preliminary injunction, this Court must consider four factors:

> (1) the likelihood that the party seeking the preliminary injunction will succeed on the merits of the claim; (2) whether the party seeking the injunction will suffer irreparable harm without the grant of the extraordinary relief; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest is advanced by the issuance of the injunction. [*Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994) (citing *Keeweenaw Bay Indian*

*Community v. Michigan*, 11 F.3d 1341, 1348 (6th Cir. 1993)).]

"A district court is required to make specific findings concerning each of the four factors, unless fewer factors are dispositive of the issue." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir. 1997) (citing *In re Dolorean Motor Co*, 755 F.2d 1223, 1228 (6th Cir. 1985)).   The decision of whether to issue a preliminary injunction lies within the discretion of the district court. *CSX Transp, Inc v. Tennessee State Bd. of Equalization*, 964 F.2d 548, 552 (6th 1992).  "[T]he less certain the district court is of the likelihood of success on the merits" of the claims, the greater the burden on the plaintiff to "convince [it] that the public interest and the balance of hardships tips in [plaintiffs'] favor." *Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 917 (9th Cir. 2003).

> **A.    Plaintiff is unlikely to succeed on the merits of his claim where clearly established law condones post-deprivation hearings in license suspension actions.**

As discussed at length in Defendants' Motion For Summary Judgment (Dkt. #27), Plaintiff has no likelihood of success on the merits against Defendant Johnson in either her individual or official capacity for at least two reasons (1) Michigan drivers' due process rights are protected by notice and the opportunity to be heard at a post-deprivation hearing, and (2) qualified immunity protects Secretary Johnson unless she "knowingly or intentionally violated Plaintiff's constitutional rights, mere negligence or recklessness is insufficient."

> **1.    Michigan suspension procedures are constitutionally adequate by providing notice and the opportunity to be heard at a post-deprivation hearing.**

Applying the test from *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed. 18 (1976), in determining whether a state has afforded sufficient due process to protect the

interest in driving, state and federal courts have consistently held that the opportunity to be heard at a post-deprivation hearing provides sufficient due process in a license suspension action.  See *Illinois v. Batchelder*, 463 U.S. 1112, 103 S.Ct. 3513, 77 L.Ed. 1267 (1983 ) (post-deprivation hearing sufficient in implied consent cases); *Dixon  v. Love*, 431 U.S. 105, 97 S.Ct. 1723 (1977) (post-deprivation hearing sufficient in repeat traffic offender cases); *Montrym*, 443 U.S. at 13 (stating "[t]he Due Process Clause simply does not mandate that all governmental decision making comply with standards that assure perfect, error-free determinations" in upholding mandatory suspension for refusal to submit to breath analysis); *Nicholas v. Secretary of State*, 74 Mich. App. 64, 253 N.W.2d 662 (1977)(pre-deprivation hearing not constitutionally mandated for repeat bad-driving offender), *Cameron v. Secretary of State*, 63 Mich. App. 753, 235 N.W.2d 38 (1975)(preemptory suspension of driver convicted of homicide complied with due process requirements).  This is true even where the suspension was based on an out-of-state conviction.  See *Maumee v. Gabriel*, 518 N.E.2d 558 (Ohio 1988)(holding procedure in suspending the license of an Ohio driver based on a default judgment for a traffic citation in another state and offering the driver post-deprivation hearing, if requested, was constitutionally sufficient under *Mathews* where public safety was important state interest and risk of erroneous deprivation was small).

Plaintiff seems to assert that he is entitled to additional due process protection because he is the victim of identity theft by a third party.  But, even if true, it is certainly not clearly established law that entities that manage driving privileges in the fifty states are required to provide additional due process protection to this minute section of the driving public.  In Michigan, there are seven million registered drivers.  (Bueter Dep., Dkt. #27-5, p. 101.)  Plaintiff states that there are just over one thousand requests for a flash each year.  This amounts to a

16

fraction of one tenth of one percent of the Michigan drivers.  The statutes allowing for suspension based on out-of-state convictions enacted by a power greater than the Secretary of State and are created to regulate the masses, not the exceptions.

> **2.    Qualified immunity protects Secretary Johnson because the right claimed by Plaintiff was not clearly established and there is no evidence that she knowingly or intentionally violated Plaintiff's constitutional rights.**

Disregarding the preceding discussion and assuming the current procedures are constitutionally deficient for victims of identity theft, the law was not clearly established and Secretary Johnson, in either her individual or official capacity, could not have known the laws or the application of the laws violated Plaintiff's due process rights.   In *Ahlers v. Schebil*, 188 F.3d 365, 372–73 (6th Cir. 1999), the Sixth Circuit held that qualified immunity attaches to a §1983 claim if the governmental employee "acted under the objectively reasonable belief that his or her actions were lawful."  "The unlawfulness of the official's actions must be apparent." *Cameron v. Seitz,* 38 F.3d 264, 272 (6th Cir.1994).  Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Sova v. City of Mount Pleasant,* 142 F .3d 898, 902 (6th Cir.1998) (quoting *Hunter v. Bryant,* 502 U.S. 224, 229 (1991)).   Here, Plaintiff must show Secretary Johnson is not entitled to qualified immunity because she "knowingly or intentionally violated Plaintiff's constitutional rights, mere negligence or recklessness is insufficient."  See *Ahlers v. Schebil*, 188 F.3d at 372–73; *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) (holding plaintiffs must establish that governmental employee is not entitled to qualified immunity).

Plaintiff's only allegation against Secretary Johnson in her individual capacity is that she has been aware of Plaintiff's claim since he filed suit in 2012 and has failed to take action.

(Amended Complt. Dkt. #18) As argued in Defendants' Motion for Summary Judgment, simply filing suit against the director of an agency does not create an individual capacity claim.  If such practice was acceptable, the head of every government body, including the President of the United States, would be subject to personal liability under nearly any theory.

Plaintiff has taken the deposition of Fred Bueter, the Fed. Rule Civ. P. 30(b)(6) agent of the Secretary of State, and received sworn answers to three separate discovery requests.  The best Plaintiff can establish is that he notified the SOS through email with a clerk six weeks after the Order of Action was sent stating someone was using his DLN and his license was suspended.  He did not appeal the suspension or otherwise inform the Secretary of State that the suspension may have been erroneous.  And, there is not a scintilla of evidence that anyone outside of the Records Division was aware that Plaintiff had a problem based on an erroneous conviction.  Plaintiff did not reach out for help, but rather, filed suit.  Even if Plaintiff could establish the due process provided was insufficient because he was the victim of an identity theft, that right was not, and is not, clearly established.  Thus, qualified immunity would bar suit against Secretary Johnson in any capacity.

Plaintiff cannot prevail on the merits of his claim because he cannot show a clearly established due process violation or Secretary Johnson's intentional and knowing violation of Plaintiff's constitutional rights.   Thus, on this factor alone, Secretary Johnson has established that Plaintiff's request for injunctive relief should be denied.

### B.     Plaintiff cannot establish the irreparable harm prong to justify injunctive relief.

Plaintiff cannot establish irreparable harm if an injunction is not granted forbidding Secretary Johnson from ever taking action against his driving privileges.  Plaintiff acknowledges financial harm can be compensated, but ignores that payment for emotional damages are

compensable at a trial on the merits. *Basicomputer Corp. v. Scott,* 973 F.2d 507, 511 (6th Cir.1992). Moreover, as discussed at length above and in Defendant's Motion for Summary Judgment, Plaintiff has had the opportunity since September, 2011 to have his driving privileges reinstated, but has not availed himself of any of the opportunities to do so. Moreover, if Plaintiff takes action and uses the procedures provided by state agencies and the federal government, he will not suffer a deprivation of his driving privileges in the future based on the acts of a third person.

Thus, in addition to failing to meet his burden of demonstrating a substantial likelihood of success on the merits of his claims, Plaintiff fails to show that he will suffer irreparable harm absent the issuance of an injunction.

    **C.**    **The balance of hardships weighs against granting an injunction and the public interest will be harmed by granting an injunction in this case.**

The potential for harm to others and the question of the effect on the public interest are closely related in this case. The Secretary of State's office is charged with insuring, in part, that qualified and safe drivers occupy Michigan roadways. If an injunction entered requiring the SOS to provide a pre-deprivation hearing or only register actions against a driving record based on government issued identification or biometric data at the time of arrest, the effects on the agency would be destructive. As with criminals giving false names as traffic stops to avoid liability, those who would will learn how to circumvent the system to gain a perceived benefit such a delaying a license suspension. The SOS would be literally overrun with requests for a pre-deprivation hearing if a driver could forestall an impending suspension by claiming victim of identity theft status (or other error). Under the current system, because there is nothing to be gained—such as avoiding a suspension—by requesting a post-deprivation hearing, the timing of the process winnows out the illegitimate requests. This timing has been determined to be

19

constitutionally sufficient where the interest of the State is public safety.  Thus, not only would

the Secretary of State be harmed by demand that exceeded the resources, but also the interest of

the public, which is consonant with the legitimate interest of the State in keeping Michigan roads

safe, would be harmed by delaying the license suspension of drivers that were not erroneously or

mistakenly affected. A grant of a preliminary injunction in this case would gravely affect that

interest.

## CONCLUSION AND RELIEF REQUESTED

Plaintiff has failed to meet the standards necessary for the declaratory and injunctive

relief he requests.  A declaratory judgment or injunction would cause harm to the State and its

citizens and would not provide Plaintiff with anything more than the relief that is currently

available to him.  For these reasons, Defendant Johnson respectfully requests Plaintiff's Motion

For Partial Summary Judgment be denied.

Respectfully submitted,

Bill Schuette
Attorney General

*s/Lisa Clark Geminick*
Lisa Clark Geminick
Assistant Attorney General
Attorneys for Defendants
Public Employment, Elections & Tort Div
geminickl@michigan.gov
Dated: June 4, 2013                     P60964

20

**CERTIFICATE OF SERVICE (E-FILE)**

I hereby certify that on June 4, 2013, I electronically filed the above document(s) with the Clerk

of the Court using the ECF System, which will provide electronic copies to counsel of record.

*s/Lisa Clark Geminick*
Lisa Clark Geminick
Assistant Attorney General
Attorneys for Defendants
Public Employment, Elections & Tort Div
geminickl@michigan.gov
P60964

S:\PEET_Assignment_Control\Cases\Open\2012\Cleary, Randy USDC-ED 2012-0012526-A\resp01  brf 060413.doc