**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

RANDY CLEARY, formerly known as
RANDY REITZ, formerly known as RANDY
REETZ,

       Plaintiff,

                                        Case No. 12–11988
v.                                     Hon. Lawrence P. Zatkoff

DANIEL HEYNS, RUTH JOHNSON,
MAURA CORRIGAN and DAVED B. BEHEN,

       Defendants.
_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on March 21, 2014

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Plaintiff Randy Cleary's Motion for Partial Summary Judgment

[dkt 25] and Defendants Daniel Heyns, Ruth Johnson, Maura Corrigan and Daved B. Behen's Motion for

Summary Judgment [dkt 27].[1]  Both motions have been fully briefed.  The Court finds that the facts and

legal arguments are adequately presented in the parties' papers such that the decision process would not be

significantly aided by oral argument.  Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby

---

[1]Also before the Court is Plaintiff's ex–parte motion for leave to file excess pages for his partial motion for summary judgment
[dkt 24].  As the Court will consider all of Plaintiff's Motion for Partial Summary Judgment, the Court hereby GRANTS
Plaintiff's ex–parte motion for leave to file excess pages.

ORDERED that the motions be resolved on the briefs submitted without oral argument.  For the following reasons, Plaintiff's motion is DENIED and Defendants' motion is GRANTED.

## II. BACKGROUND

Michigan Compiled Laws § 257.319(e) requires the Secretary of State for the State of Michigan ("SOS") to suspend an individual's Michigan driver's license upon receipt of an abstract of conviction for a violation by that individual of another state's law regulating a controlled substance.  This mandatory suspension is at the heart of the instant dispute, as the SOS suspended Plaintiff Randy Cleary's ("Plaintiff") driver's license in 2011 after receiving such an abstract for a drug conviction from the State of Georgia ("Georgia").  Plaintiff asserts that he was never convicted of any drug–related offense in Georgia, and is instead a victim of identity theft.  Plaintiff alleges the mistake made by Georgia—and the subsequent suspension of his driver's license by the SOS—resulted in Plaintiff improperly losing his driver's license for over a year.  Plaintiff further asserts that various State of Michigan agencies placed and maintained this meritless conviction on Plaintiff's criminal record by associating him with the person responsible for stealing his identity, an association that Plaintiff alleges prevented him from attaining gainful employment.  Plaintiff maintains these actions have deprived him of his constitutional rights to due process and unconstitutionally barred Plaintiff from employment opportunities with state licensed facilities.  The facts behind each claim will be addressed in turn.

A. SUSPENSION OF PLAINTIFF'S DRIVER'S LICENSE[2]

Plaintiff asserts the most recent suspension of his driver's license stems from problems Plaintiff has with an identity thief that began over two decades ago.  Since 1987, another individual has used Plaintiff's identity during that person's encounters with law enforcement.  Plaintiff points to at least six prior occasions

---

[2] Plaintiff's claims surrounding the suspension of his license implicate only Secretary of State Ruth Johnson ("Defendant Johnson").  As such, all arguments in Defendants' Motion for Summary Judgment concerning Plaintiff's suspended driver's license will be ascribed to Defendant Johnson.

where the State of Michigan has suspended Plaintiff's driver's license or associated Plaintiff with the actions of his identity thief.  As a result of these incidents, Plaintiff has been assessed numerous fines and has legally changed his name twice.  Notably, in 1999, Plaintiff had a "driver license alert"—or "flash"—placed on his driver's license so as to alert law enforcement officers that Plaintiff's name had been used by another individual and that they should ask for sufficient identification whenever Plaintiff's name and date of birth were used during a traffic stop.  Plaintiff did not renew the "flash" when it expired in 2006.

Plaintiff's myriad allegations relating to events prior to the most recent suspension of his driver's license enumerate interactions Plaintiff had with the State of Michigan and his identity thief over the past twenty–five years.  These interactions, however, have no bearing on the issue at hand: the 2011 suspension of Plaintiff's driver's license by the SOS upon receiving a certified abstract of conviction from Georgia.[3]  As such, the Court will focus its attention on this incident.

On August 26, 2011, the SOS issued an Order of Action suspending Plaintiff's driver's license from September 11, 2011 through midnight of March 11, 2012.  The Order of Action additionally required Plaintiff to immediately surrender his license to the Bureau of Driver and Vehicle Records.  The Order of Action indicated this suspension was the result of a certified abstract of court received from Georgia purporting Plaintiff had been convicted in Georgia for the offense of "drug crime."  Plaintiff points out that this certified abstract referred to the conviction of a person named "Randy Clearly,"—Plaintiff's name at that time was "Randy Cleary" without the second letter "L"—with the same date of birth and driver's license number as Plaintiff.  Defendant Johnson asserts SOS policy was followed, as the SOS utilizes a two–out–of–three criteria match system using the driver's name, date of birth, and Michigan driver's license number when applying in–state and out–of–state convictions to the driving records of Michigan drivers.

---

[3] Michigan law provides for a three–year statute of limitations for 28 U.S.C. § 1983 ("§ 1983") claims.  *See Carroll v. Wilkerson*, 782 F.2d 44, 45 (6th Cir. 1986), Mich. Comp. Laws § 600.5805(10)

The opposite side of the Order of Action includes sections titled "YOUR RIGHT TO APPEAL" and "REQUEST FOR APPEAL."  Plaintiff contends neither of these sections contain means of contesting the validity of the suspension.  Plaintiff asserts the language instead indicates that Plaintiff could only receive a hearing in the state where the conviction occurred—in this case, Georgia—and that Plaintiff must attach a copy of the order or conviction from the city or state where the conviction occurred to any such request for a hearing.  Plaintiff never received a copy of the order or conviction, as it was sent to a fictitious address provided to Georgia authorities by the person that stole Plaintiff's identity.  Defendant Johnson asserts the Order of Action clearly notifies Plaintiff of his right to appeal the suspension by mailing or faxing a written request.

The relevant sections at issue in the actual Order of Action read as follows:

### SECTION II.  YOUR RIGHT TO APPEAL

IT IS IMPORTANT YOU READ THESE INSTRUCTIONS CAREFULLY TO THOROUGHLY PREPARE FOR YOUR HEARING.

You may request a hearing for a waiver of the suspension/restriction of similar duration in the state where the conviction occurred and/or you held an out–of state license at the time of the conviction.

**WHAT PROOFS TO BRING TO HEARING OR SEND WITH REQUEST**
. . .
II. If you wish to request your suspension be waived, send the following:
    A. The attached **ORDER OF ACTION**
    B. Proof of out–of–state **suspension/restriction** (from and through dates) with any of the following:
        1. Order from the court, court docket or judgment from city/state where the conviction occurred.
        2. Order from the Department of Motor Vehicles from the city/state where the conviction occurred.
    C. Proof of stay in the state for equal to or more than the period of Michigan suspension. . . .
    D. Proof of out–of–state license at the time of the conviction in question
    E. Proof that you did not have a Michigan license during the period

4

## SECTION III. REQUEST FOR APPEAL

TO:    Driver License Appeal Division
Michigan Department of State
Box 30196
Lansing MI 48909–7696

In accordance with the statute, I hereby appeal the Decision to suspend or revoke my driving privilege and request a hearing before the Driver License Appeal Division.

Signature of Appellant _____    Date _____

Plaintiff never mailed back the Order of Action requesting a hearing. Instead, Plaintiff sent an e–mail to SOS—46 days after SOS issued the Order of Action and 30 days after Plaintiff's driver's license was officially suspended—asking how he could get his license back. A technician for the Department of State Information Center responded, stating that Plaintiff needed to contact the "courts that the tickets are on" in order to have his driving record amended.

Although Plaintiff's initial request for relief included recovery of his license, his driver's license has since been restored.[4] Defendant Johnson acknowledges that Plaintiff is not the individual that committed the crimes in Georgia that were associated with Plaintiff's name. Further, Plaintiff received a certificate from the Director of the Criminal Justice Information Center ("CJIC") on October 12, 2011, stating that Plaintiff had no criminal history in Michigan and that Plaintiff may have been the victim of identity theft.

Plaintiff asserts that SOS procedures in suspending his driver's license failed to provide him with the type of procedural due process required by the Constitution for such a deprivation. Plaintiff alleges that the SOS—in receiving nearly 1,000 complaints a year from individuals reporting identity theft–related infractions—should give special consideration to citations issued to such individuals. By not doing so, Plaintiff claims Defendant Johnson and the SOS failed to provide the due process such a deprivation

---

[4] Both parties have offered several reasons as to why the delay Plaintiff suffered in regaining his driver's license is the fault of the other party. The evidence provided is rife with bickering and demonstrates a basic inability by either party to sort through even basic scheduling arrangements. As Plaintiff has retained his driver's license, the Court will disregard these "proofs" as nothing more than adolescent incompetence submitted by both parties.

requires. Further, Plaintiff alleges Defendant Johnson, as Secretary of State for the State of Michigan, has refused to change these defective policies. Plaintiff asserts his claim put Defendant Johnson on notice that these defects exist, and that, despite having the ability and authority to do so, Defendant Johnson's refusal to take any remedial action is further proof that Plaintiff's procedural due process rights have been violated. Plaintiff contends Defendant Johnson should thus be held personally liable.

Defendant Johnson alleges SOS procedures comply with constitutional procedural due process requirements, as Defendant Johnson contends Plaintiff was given notice and a meaningful opportunity to be heard at a post–deprivation hearing. Defendant Johnson also asserts that Plaintiff's individual capacity claim against her fails because she is protected by qualified immunity and Plaintiff does not show that Defendant Johnson's conduct violated clearly established statutory or constitutional rights.

B. PLAINTIFF'S DISQUALIFICATION FROM EMPLOYMENT IN STATE–RUN FACILITIES

Plaintiff's other claims deal with his disqualification from working for a state–run facility. On September 19, 2011, Plaintiff applied for a maintenance position with an adult foster care home called New Hudson Manor. Plaintiff asserts he was denied employment with New Hudson Manor because the statutorily required background check conducted by New Hudson Manor associated the criminal activities of an identity thief with Plaintiff. Specifically, Plaintiff asserts New Hudson Manor was required by the Department of Human Services ("DHS") to perform a preliminary background check on all persons it agreed to hire. In turn, Plaintiff contends DHS checked the Offender Tracking Information System ("OTIS") database operated by the Department of Corrections ("DOC"). That database, according to Plaintiff, returned results matching Plaintiff's name and birthday with one of the aliases of Plaintiff's identity thief. In accordance with this match, Plaintiff asserts DHS rules immediately disqualified Plaintiff from employment with a DHS–licensed facility.

Plaintiff contends this is an example of the continued failures in data storage committed by the Defendants.  Plaintiff asserts the evidence provided in the instant matter show that DHS and DOC databases are not designed to be accurate or reliable for employment screening.  Plaintiff claims the Department of Management, Budget and Technology ("DMBT")—the state government agency charged with housing and servicing DOC data—has no policy to protect people from identity theft related to DOC systems. Plaintiff argues the combined practices of Defendants[5] have operated systematically to needlessly oppress Plaintiff; that, by barring Plaintiff from working in his chosen profession and forcing him to hire attorneys, Defendants have violated Plaintiff's substantive due process rights.  Defendants' misappropriation of criminal activity to his criminal record, Plaintiff alleges, has also resulted in defamation that has injured his constitutionally protected reputation, good name, honor and integrity.

Defendants acknowledge that records from New Hudson Manor indicate Plaintiff was not hired based on exclusionary findings New Hudson Manor received from OTIS.  Defendant asserts, though, that any search of the OTIS database does not associate Plaintiff—when searching for offenders with the name "Randy Cleary"—with any criminal history.  Further, Defendants claim Plaintiff has provided no proof that his right to privacy or harm to reputation is a fundamental right that represents a valid claim under § 1983. Finally, Defendants Johnson and Heyns assert Plaintiff's claims against each in their individual capacity fail due to the qualified immunity they possess.

C. PROCEDURAL HISTORY

On January 10, 2013, Plaintiff filed his amended complaint.  In this complaint, Plaintiff sought several types of relief.  Specifically, Plaintiff requested:

1) A preliminary injunction against Defendants taking further adverse actions against Plaintiff based upon the criminal activity of his identity thief;
2) Declaratory and injunctive relief barring further harm to Plaintiff;

---

[5] Defendant Daniel Heyns ("Defendant Heyns") is Director of the DOC.  Defendant Maura Corrigan is director of DHS. Defendant Daved Behen is the Chief Information Officer of DMBT.

3)  Damages;
4)  Any other appropriate relief; and
5)  Costs and fees allowable under 42 U.S.C. § 1988.

At various points after this amended complaint was filed, it was discovered by the Court that Plaintiff's driver's license was reinstated and that the Director of the CJIC had issued a certificate to Plaintiff indicating he had no criminal history in the State of Michigan.  Accordingly, the Court inquired as to whether there was any further relief Plaintiff sought.  In response, Plaintiff indicated he still sought:

1)  Declaration that Plaintiff is not the identity thief;
2)  An injunction against Defendants taking his license based on actions of a third party without due process;
3)  An injunction against Defendants prohibiting him from working based upon the criminal acts of a third party;
4)  An injunction against further defamation; and
5)  Actual damages arising from Defendants' taking of Plaintiff's driver's license and keeping it from him after notice of the taking.

### III. LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001).  The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the nonmoving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325).

Once the moving party has met its burden of production, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts."

8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The nonmoving party must "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)).  "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

### A. PROCEDURAL DUE PROCESS

Plaintiff asserts a procedural due process claim under § 1983.  Specifically, Plaintiff asserts Defendant Johnson[6] suspended Plaintiff's driver's license without due process by failing to provide any notice or a meaningful opportunity to be heard.  Plaintiff alleges Defendant Johnson failed to ever provide any sort of pre–deprivation or post–deprivation hearing, the lack of which violates Plaintiff's due process rights.  As relief for this deprivation, Plaintiff seeks a declaration from this Court finding that Plaintiff is not the individual who committed the Georgia traffic offenses for which the SOS suspended Plaintiff's driver's license. Plaintiff also seeks an injunction against present and future action by the SOS against Plaintiff based upon the actions of third parties in the absence of positive government–issued identification of biometric identification.

#### I. Legal Standard

In determining whether a violation of procedural due process has occurred, a court must first determine whether the "right" at stake is within the protection of the 14th Amendment.  *Hamilton v. Meyers*,

---

[6] Plaintiff's procedural due process claim is brought against Defendant Johnson in her official and individual capacity.  Plaintiff's suit against Defendant Johnson in her official capacity will be treated as a suit against the State of Michigan itself.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State.")  While Plaintiff also seeks to hold Defendant Johnson liable in her individual capacity, the Court will address this claim separately.

281 F.3d 520, 529 (6th Cir. 2002).  A court must look at independent sources of law—rather than the

Constitution—to determine whether the alleged right in property is actually recognized.  *See Bd. of Regents*

*of State Colleges v. Roth*, 408 U.S. 504, 577 (1972) ("Property interests, of course, are not created by the

Constitution. Rather they are created and their dimensions are defined by existing rules or understandings

that stem from an independent source such as state law–rules.").

Once a property right is established, an analysis of the governmental and private interests at stake is

in order.  *Mathews v. Eldridge*, 434 U.S. 319, 334 (1976).  The Supreme Court illuminated three areas of

analysis a court's review must contain in examining the process at issue: "First, the private interest that will

be affected by the official action; second, the risk of an erroneous deprivation of such interest through the

procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and

finally, the Government's interest, including the function involved and the fiscal and administrative burdens

that the additional or substitute procedural requirement would entail."  *Mathews*, 434 U.S. at 335.

Finally, § 1983 is not itself a source of substantive rights, but rather provides a right of action for the

vindication of independent constitutional guarantees.  *See Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th

Cir. 1990).  "A § 1983 plaintiff may prevail on a procedural due process claim by either (1) demonstrating

that he is deprived of property as a result of established state procedure that itself violates due process rights;

or (2) by proving that the defendants deprived him of property pursuant to a 'random and unauthorized act'

*and* that available state remedies would not adequately compensate for the loss."  *Macene v. MJW, Inc.*, 951

F.2d 700, 706 (6th Cir. 1991) (emphasis in original).

II. Analysis

Both parties agree the "right" at stake—the right to a driver's license—is a property right protected

by the 14th Amendment.  *See Dixon v. Love*, 431 U.S. 105, 112 (1977) ("It is clear that the Due Process

10

Clause applies to the deprivation of a driver's license by the [State].").[7]  The parties disagree upon whether Plaintiff was provided with the requisite due process for deprivation of this right.

<u>i. Plaintiff's Property Right at Stake did not Warrant a Pre–Deprivation Hearing</u>

Plaintiff first contends that he was due a pre–deprivation hearing.  Plaintiff relies on the Supreme Court's decision in *Parratt v. Taylor* in contending the SOS should have provided Plaintiff with a pre–deprivation hearing because SOS was "feasibly" able to do so.  The Court finds such reliance is in error;[8] rather, the three–part analysis delineated by the Supreme Court in *Mathews* is the essential framework for determining whether a procedural due process violation has occurred. Turning now to this three–part analysis, the Court will assess whether Plaintiff's procedural due process rights were violated by Defendant Johnson in failing to provide a pre–deprivation hearing.

The private interest affected by the official action is Plaintiff's license to operate a motor vehicle. The Supreme Court previously found that such an interest was not so great as to require pre–deprivation process.  *See Dixon*, 431 U.S. at 113.  The Supreme Court did recognize, however, the importance of this interest, and a plaintiff's inability to be made "entirely whole" if a suspension is later vacated due to the loss of plaintiff's right to drive in the interim.  The Court thus finds that Plaintiff does have a recognizable and significant private interest at stake.

The Court turns next to assess the risk of erroneous deprivation of this private interest and the potential value of additional or substitute procedures.  Plaintiff argues that the instant case—along with the 1,000 written complaints the State of Michigan receives per year from individuals complaining of identity theft—provides clear evidence that there is a high risk of erroneous deprivation of an individual's right to a

---

[7] Although Plaintiff asserts he also has a liberty interest at stake that is protected by the 14th Amendment, the Court will not separately address this argument.  *See Fox v. Van Oosterum*, 176 F.3d 342, 348 n. 2 (6th Cir. 1999) ("We do not feel that analysis of [Plaintiff's liberty] interest is materially different from an analysis of [Plaintiff's] property right in his driver's license.")

[8] *See Mathews*, 424 U.S. at 334 ("There is no one set procedure required under the 14th Amendment; rather, the concept of due process is a flexible one designed to be analyzed under the specific situation in which an issue arises."); *Macene*, 951 F.2d at 706 (indicating that the *Parratt* rule is applied to those cases where defendants are accused of depriving plaintiff of property pursuant to a random and unauthorized act, not where a property right was deprived as the result of established state procedure).

driver's license under the SOS's current procedures. Plaintiff asserts the SOS should thus require pre–deprivation process for all suspensions of driver's licenses due to an out–of–state conviction.

The Court is not convinced. Although Plaintiff asserts his experience demonstrates the risk of erroneous deprivation under the current process is high, the due process required by the Constitution does not obligate the State of Michigan to provide a flawless system. *See Mackey*, 443 U.S. at 13 ("The Due Process Clause simply does not mandate that all governmental decision[–]making comply with standards that assure perfect, error–free determinations."). Further, Plaintiff has provided no evidence that the pre–deprivation process he currently seeks would add meaningful value to those processes the State already provides. As correctly indicated by Defendant Johnson, the Supreme Court has found that, even where suspensions and revocation decisions are largely automatic—such as the suspension in this case—"the risk of erroneous deprivation in the absence of a prior hearing is not great." *See Dixon*, 431 U.S. at 113. As such, the Court finds no value in the potential additional procedures suggested by Plaintiff.

The Court is likewise unconvinced by Plaintiff's argument that his interest in his driver's license is outweighed by the State's interest in removing dangerous drivers from the road. The Supreme Court recognized in *Dixon* the high burden placed on state agencies if every suspended driver could delay such a suspension by requesting a pre–deprivation hearing of the sort Plaintiff asserts[9] due process requires. *Id.*, at 114. More fundamentally, the Court finds that allowing potentially reckless and unsafe drivers continued access to public roads—solely because their out–of–state conviction was possibly perpetrated by an identity thief—is not in the best interest of the public at large or the State of Michigan. The Court thus finds that this factor, like the second *Mathews* factor, weighs heavily in favor of the SOS.

In addition to the *Mathews* analysis, the Supreme Court and the Sixth Circuit have both found that a deprivation of a driver's license does not require a pre–deprivation hearing so long as adequate post–

_____

[9] Plaintiff alleges his pre–deprivation due process requirements would only be met by SOS if it were to provide Plaintiff with: a) notice of the charges prior to any suspension, b) an explanation of the evidence supporting those charges, and c) an opportunity to present his or her versions of the events. *See* Dkt. # 25, p. 19.

deprivation process is provided.  *See Dixon*, 431 U.S. at 115 ("We conclude that the public interests present under the circumstances of this case are sufficiently visible and weighty for the State to make its summary initial decision effective without a predecision administrative hearing."); *Fox*, 176 F.3d at 349.  While Plaintiff suggests that these cases are different than the matter at hand, for neither party in these cases challenged the underlying offense as credible, the Supreme Court also found this very distinction irrelevant. *See Mackey v. Montrym*, 443 U.S. 1, 15 (1979).  Finally, Plaintiff admits in his response to Defendants' motion for summary judgment that a meaningful post–deprivation hearing would satisfy Plaintiff's due process requirements:

> To the extent that State of Michigan wishes to continue to suspend licenses based on out of state convictions, it must either adopt procedural safeguards to insure that it is not suspending licenses based on erroneous data, or else provide prompt and meaningful post– deprivation remedies for the restoration of those licenses.

*See* Dkt. #31, p. 8.

Therefore, pursuant to the above analysis, the Court finds the SOS and Defendant Johnson were not required to provide Plaintiff with a pre–deprivation hearing.

### ii. Defendant Johnson and SOS Provided Plaintiff with the Post–Deprivation Process Required by the Due Process Clause

"The core of due process is the right to notice and a meaningful opportunity to be heard." *LaChance v. Erickson*, 522 U.S. 262, 266 (1998) (internal citations omitted).  Plaintiff asserts he was provided neither notice nor a meaningful opportunity to be heard, and that this violates Plaintiff's procedural due process rights to a post–deprivation hearing.  As Plaintiff concedes, it is his burden to prove the inadequacy of the SOS's post–deprivation remedies. *See Victory v. Walton*, 721 F.2d 1062 (6th Cir. 1983).

Despite Plaintiff's contentions otherwise, the Court finds that Defendant Johnson and the SOS provided Plaintiff with both notice and a meaningful opportunity to be heard at a post–deprivation hearing. First, the Court is perplexed by Plaintiff's argument that he was not provided with any sort of notice.

Although the Court acknowledges that the Order of Action received by Plaintiff on August 26, 2011, is not a beacon of clarity, it is beyond dispute that the Order of Action clearly states Plaintiff's license must be immediately surrendered and will be suspended starting September 11, 2011. Plaintiff incongruently asserts that Defendant Johnson and the SOS did not provide notice by failing to provide Plaintiff with information regarding the Georgia conviction. The notice required to satisfy Plaintiff's due process is not notice of information regarding the underlying crime; rather, the only notice Plaintiff is constitutionally entitled to is the notice that his protected property interest is going to be deprived by the State of Michigan. *See Jones v. Flowers*, 547 U.S. 220, 226 ("[W]e have stated that due process requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action,") (citing *Mullane v. Cent. Hanover Bank & Trust*, 339 U.S. 306, 314 (1950)). The Court thus finds the Order of Action satisfies SOS's responsibility to provide Plaintiff with notice.

Next, Plaintiff contends that he did not receive a meaningful opportunity to be heard. Plaintiff argues in numerous filings that the wording contained in the Order of Action informed Plaintiff that his sole opportunity to receive a hearing was in Georgia, the state where the underlying conviction occurred. Likewise, Plaintiff suggests the Order of Action did not provide any meaningful information about the underlying conviction in Georgia, while informing Plaintiff that he <u>must</u> attach a copy of the order or conviction from the city or state where the conviction occurred to any such request for a hearing. Plaintiff asserts he was never provided this information. Plaintiff relies on the lack of this information—along with his assertion that the Order of Action provides no means for contesting its validity—to argue that he was denied a meaningful opportunity for a post–deprivation hearing.

Plaintiff's argument misstates both the contents of the Order of the Action and the due process requirements for a meaningful opportunity to be heard. First, Plaintiff asserts the following language contained in the Order of Action indicates he may only receive a hearing in Georgia: "You may request a

14

hearing for a waiver of the suspension/restriction of similar duration in the state where the conviction occurred and/or you held an out–of state license at the time of conviction." It is clear to the Court the type of hearing this sentence describes involves "waiver" of a suspension, not the appeal Plaintiff suggests he is entitled to. Further, this sentence speaks only to Plaintiff's ability to waive the suspension in Michigan for serving a suspension of similar duration in the state where the conviction occurred; nowhere in the sentence is Plaintiff informed this is the only way Plaintiff could conceivably challenge his suspension. Likewise, all of the language in the Order of Action that Plaintiff alleges requires him to provide information concerning the underlying conviction is contained under the heading, "If you wish to request your suspension be waived, send the following . . .". As Plaintiff is not, nor has he ever, suggested that his suspension should be waived, the Court finds this language irrelevant to the current issue.[10]

Further, the very same page of the Order of Action contains a section titled "REQUEST FOR APPEAL," which provides Plaintiff with an address to send his request for appeal to, along with a form sentence reading: "I hereby appeal the Decision to suspend or revoke my driving privilege and request a hearing before the Driver License Appeal Division." Notably, this language does not refer to the "waiver" hearing mentioned in the sentence relied on by the Plaintiff; instead, it plainly suggests that the recipient of the Order of Action—in this scenario, Plaintiff—could return the Order of Action requesting an appeal of his suspension. Plaintiff provides this Court with no explanation as to why he failed to return this Order of Action to the SOS when he received it, nor does he explain how this particular section fails to provide Plaintiff with a meaningful opportunity to be heard.[11]

Additionally, the Supreme Court has established that agencies need not provide individuals with any other information when information concerning the ability to appeal a deprivation of a property right is

---

[10] While the Court acknowledges the language contained with the section of the Order of Action labeled "SECTION II. YOUR RIGHT TO APPEAL" is far from perfect, it certainly does not, as Plaintiff purports, mandate the only place Plaintiff could receive a meaningful hearing was in Georgia.

[11] Notably, Plaintiff also fails to provide any explanation as to why he did not contact the SOS or any State of Michigan governmental agency until 44 days after the Order of Action was issued.

publically available. *See City of W. Covina v. Perkins*, 525 U.S. 234, 241 (1999).[12]   Further, courts within this District have previously relied on this principle. *See, e.g., Blosser v. Land*, No. 07–11781, 2008 WL 795748 (E.D. Mich. Mar. 25, 2008).   As Defendant Johnson correctly points out, information concerning a person's ability to appeal a suspension of their license is readily available online.   Indeed, this information is available on the very same website Plaintiff eventually accessed to contact the SOS 30 days after the Order of Action informed Plaintiff his suspension would commence.[13]   Published State of Michigan law also specifically lays out the process by which individuals may appeal an SOS decision to suspend their driver's license.   *See* Mich. Comp. Laws § 257.322.   Plaintiff has provided no evidence as to why he could not access these other readily available sources of information.   Instead, Plaintiff seems to imply Defendant Johnson and the SOS failed to provide him a meaningful opportunity to be heard by failing to take him step–by–step through the process of appealing his suspension.   The Court finds that requiring Defendant Johnson and the SOS to take such action would contravene the express interpretations of the Due Process Clause provided by the Supreme Court and practiced by other courts in this District.   As such, the Court finds that Defendant Johnson provided Plaintiff with a meaningful opportunity to be heard.

It is indisputable that Plaintiff did not commit the drug–related offenses for which his driver's license was suspended.   The Court finds, though, that Plaintiff was given ample opportunity to prove this through the process provided by the State of Michigan.   For the reasons stated above, the Court finds that Plaintiff was not denied his procedural due process rights, as he was provided notice and a meaningful

---

[12] In *Perkins*, the Supreme Court found that "[no] rationale justifies requiring individualized notice of state–law remedies which, like those at issue here, are established by published, generally available state statutes and case law. Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial procedures available to him. The [public entity] need not take other steps to inform him of his options."
[13] *See* "Driver License Hearing Request" *available at* http://www.michigan.gov/sos/0,4670,7-127-1627_8665_9074-29353--,00.html

opportunity to be heard at a post–deprivation hearing.  As such, Plaintiff's procedural due process claim

against Defendant Johnson is denied.[14]

B. SUBSTANTIVE DUE PROCESS

       Plaintiff also asserts that his substantive due process rights were violated.  Plaintiff alleges a

substantive due process claim based on two theories:

1) Defendants' actions constitute arbitrary and capricious action by the State of Michigan; and
2) This action "shocks the conscience" in such a way as to violate Plaintiff's substantive due process rights.

As relief for these claims, Plaintiff seeks an injunction against Defendants prohibiting him from working

based upon the criminal acts of a third party, and an injunction against Defendants from further and future

defamation.  Defendants assert Plaintiff cannot establish a violation or deprivation of a fundamental right or

protected liberty interest to maintain a substantive due process claim.

     I. Legal Standard

       Substantive due process is defined generally as "[t]he doctrine that governmental deprivations of

life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed[.]"

*Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992).  When government action is

challenged on substantive due process grounds, a court must first determine whether a fundamental right is

implicated.  Should the interest presented be found "fundamental," deprivation of such an interest will be

analyzed under strict scrutiny.  *Reno v. Flores*, 507 U.S. 292, 301–302 (1993).  If the right is not

fundamental, however, the court must apply a "rational basis" review.  *See, e.g.*, *Seal v. Morgan*, 229 F.3d

567, 575 (6th Cir. 2000) ("Government actions that do not affect fundamental rights or liberty interests . . .

will be upheld [if] they are rationally related to a legitimate state interest.").

---

[14] As Plaintiff's motion for partial summary judgment [dkt 25] deals solely with this issue, it is hereby DENIED.  Further, the Court will not consider Plaintiff's arguments for declaratory or preliminary injunctive relief, as the Court's ruling as to procedural due process makes any discussion of either moot.

II. Analysis

An interest is fundamental for the purposes of substantive due process analysis if it is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [it] were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720–721 (1997). A long line of cases exist indicating liberties outside those specifically enumerated in the Bill of Rights that are protected under the concept of substantive due process. *Id.* Determining a particular right is "fundamental" for purposes of substantive due process relief, however, is a decision not easily made. *See Collins v. City of Harker Heights, Tex*, 503 U.S. 115, 125 (1992) ("The doctrine of judicial self–restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field."). Indeed, "the [Supreme] Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decision[–]making in this unchartered area are scarce and open–ended." *Id.* (internal citations omitted). A court must make certain to provide a "careful description" of the right claimed within its substantive due process analytical framework, so as to properly determine whether such a right is truly fundamental. *See, e.g.*, *Doe v. City of Lafayette, Ind.*, 377 F.3d 757, 769 (7th Cir. 2004) ("Our careful description of the asserted right must be one that is specific and concrete, one that avoids sweeping abstractions and generalities.") (internal quotations and citations omitted).

In this matter, Plaintiff is specifically claiming an injury to his reputation in connection to the "stigmatizing statements" made by Defendants in connecting Plaintiff's name to that of his identity thief. Specifically, Plaintiff asserts that Defendants continue to associate his name as a known alias on the criminal records of his identity thief. This continued maintenance, Plaintiff contends, caused a state–run care facility Plaintiff was attempting to gain employment with to inappropriately match Plaintiff's name with his identity thief's criminal record. This match, Plaintiff argues, resulted in the loss of this employment opportunity.

18

Plaintiff therefore asserts Defendants' misappropriation of Plaintiff's name is defamation of his reputation of the sort that violates Plaintiff's fundamental substantive due process rights.

Plaintiff's argument is based upon a faulty premise. While Plaintiff asserts that individuals may assert claims for injury to their reputation based on "stigmatizing statements" that cause loss of employment, Plaintiff has failed to prove that any fundamental interest is implicated. Although Plaintiff has not portrayed his argument in this fashion, Defendants correctly point out that Plaintiff is asserting Defendants violated Plaintiff's right to informational privacy by disseminating information associating Plaintiff with his identity thief. Any plaintiff alleging a violation of their right to informational privacy must prove their interest at stake relates to a fundamental right. *See Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008). As the Supreme Court and Sixth Circuit have both indicated, there is no stand–alone liberty interest in one's reputation. *See Paul v. Davis*, 424 U.S. 693, 708–09 (1976); *Lambert*, 517 at 443–45.

In the same vein, Plaintiff's assertions that Defendants' actions are arbitrary and capricious and "shock the conscience" miss the mark. These arguments fail to address the underlying requirement that the interest at stake implicates a fundamental right. Additionally, Plaintiff has provided no proof that listing his name as a known alias used by his identity thief is "arbitrary and capricious,"[15] or that Defendants' reliance on name matches for connecting out–of–state convictions with Michigan driver's license holders "shocks the conscience." As such, the Court finds that no fundamental interest is at stake in this case.

In the absence of a fundamental right, the Court must assess Plaintiff's substantive due process claim using the rationale basis standard enumerated above. It is the plaintiff's burden to establish that the defendant's action is not rationally related to a legitimate government interest. *Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, at 1228 (6th Cir. 1997). As Plaintiff provides no argument that

---

[15] As noted by Defendants, Plaintiff's claim that a search of the OTIS system using Plaintiff's name—"Randy Cleary"—produces the criminal record of Plaintiff's identity thief is simply false.

Defendants' actions in this case are not rationally related to a legitimate government purpose, the Court finds that Plaintiff has failed to meet this burden.

As such, the Court finds that Plaintiff's substantive due process claim must fail.

C. QUALIFIED IMMUNITY

In addition to bringing claims against Defendants in their official capacity, Plaintiff seeks relief against Defendant Johnson and Defendant Heyns in their individual capacity.  Plaintiff asserts that, by filing the instant action, both Defendants Johnson and Heyns were put on actual notice of the violations of Plaintiff's rights they were committing. Instead of fixing their mistakes, however, Plaintiff asserts neither Defendant Johnson nor Defendant Heyns did anything to correct the misinformation connected with Plaintiff or the allegedly defective policies that led to this false connection. This inaction, Plaintiff contends, constitutes actions for which each must be held personally liable.

As Plaintiff acknowledges, a crucial part of determining whether qualified immunity defense exists is determining whether the facts show a violation of a constitutional right has occurred.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  As is established above, the facts do not show that Defendants violated any of Plaintiff's constitutional rights.  A discussion of qualified immunity for Defendants Johnson and Heyns, therefore, is irrelevant.

**V. CONCLUSION**

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED that Plaintiff's Motion for Partial Summary Judgment [dkt 25] is DENIED and Defendant's Motion for Summary Judgment [dkt 27] is GRANTED.

IT IS FURTHER ORDERED that, as this Order dismisses all of Plaintiff's claims, Plaintiff's pending motion for Order Restoring Driving Privileges [dkt 37] is DENIED as moot.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
HON. LAWRENCE P. ZATKOFF
U.S. DISTRICT COURT

Dated:  March 21, 2014